AERO SUPPORT SYSTEMS, INC., Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First RepublicBank Brownwood, N.A., and NCNB Texas National Bank, Defendants,

and

Martinaire, Inc., Defendant.

No. Civ. A. 6–88–0042W.

United States District Court,
N.D. Texas,
San Angelo Division.

April 27, 1989.

Charles E. McDonald, Bangs, Tex., for plaintiff.

William Frank Carroll, John Mitchell Nevine, David E. Howe, Baker, Mills & Glast, P.C., Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

WOODWARD, Senior District Judge.

On this date the Court considered the Motion to Dismiss filed by the Federal Deposit Insurance Corporation, as Receiver for First RepublicBank Brownwood, N.A. (FDIC) and NCNB Texas National Bank (NCNB), together with Plaintiff's responses. Because the Court has considered matters outside the pleadings, as submitted by FDIC and NCNB in their Reply Brief, the

Court will treat the Motion to Dismiss as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff originally filed its action in state court against RepublicBank, N.A., Brownwood. First RepublicBank Brownwood, N.A. is the successor in interest to RepublicBank N.A. Brownwood. First RepublicBank, N.A. was later declared insolvent by the Comptroller of the Currency and FDIC was appointed as Receiver of First RepublicBank Brownwood, N.A. NCNB is the bridge bank created by FDIC to handle the distribution of assets and liabilities arising from the closing of First RepublicBank. FDIC and NCNB intervened in the state action and removed the case to this Court. NCNB intervened in order to protect certain property rights and interest in the Piper Aircraft which is involved in this action and upon which a first lien is claimed.

FDIC and NCNB have moved to dismiss Plaintiff's claims under the estoppel doctrine of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

FDIC and NCNB have suggested that all claims against Defendant, Martinaire, Inc. be dismissed for want of prosecution and Plaintiff states in its response to the Motion to Dismiss that it intends to nonsuit Martinaire.

Plaintiff, in its Original Petition, alleges that it performed repairs, inspections and maintenance on a Piper aircraft PA31–350, N27989 in the amount of $42,000.00; and that it filed its claim represented by UCC financing statement. Plaintiff further alleges that it advised RepublicBank of its mechanic's lien on the aircraft.

The essence of Plaintiff's remaining allegations in its Original Petition are that Plaintiff and RepublicBank entered into a "partially oral and partially written agreement" whereby Plaintiff would not file the alleged mechanic's lien which the Bank allegedly recognized; that it would pay the Bank approximately $10,000.00 in exchange for which the Bank would transfer title to the aircraft to Tex–Star Airlines, Inc., a wholly-owned subsidiary of Plaintiff. The

Bank further allegedly agreed to allow Plaintiff possession of the aircraft if the Bank foreclosed on the aircraft. Plaintiff alleges that it relied on the "promises" of the Bank, but that the Bank "breached its agreement" by seizing the aircraft and by "conspiring" to defraud Plaintiff. Further Plaintiff alleges that such breach of the oral agreements constituted a violation of the Texas Deceptive Trade Practices–Consumer Protection Act. Plaintiff seeks exemplary damages for the alleged "malicious" breach of the oral agreements.

The Plaintiff seeks a judgment against Defendants for:

1) The value of the property converted in the sum of $115,500.00,

2) Punitive damages of $346,500.00,

3) Damages of Deceptive Trade Practices in the amount of $346,500.00,

4) Attorneys fees of an amount in excess of $30,000.00, and $15,000.00 for appeal, and $15,000.00 for appeal to the Supreme Court, if necessary,

5) That Plaintiff recover prejudgment interest on its actual damage, and

6) That Plaintiff recover post judgment interest.

From Plaintiff's complaint, it appears that all of its claims are based upon alleged "oral or side agreements" which it claims were breached by the Bank.

Plaintiff in its "First Amended Opposition to Defendant's Motion to Dismiss," for the *first* time argues that its action is brought to foreclose its lien for the alleged repairs, maintenance, and inspections of the aircraft. Plaintiff states that:

The only issue which is before the Court and which should be tried at this time is (1) whether or not Plaintiff performed the repairs and replacements on the airplane that he alleges that he did, and (2) how much those repairs costs so long as the cost did not exceed the value added to the plane by such repairs. Opposition at page 3, paragraph 10.

In its Brief, Plaintiff states that it "seeks to foreclose its lien on the aircraft."

The Court finds that Plaintiff has not plead a cause of action for foreclosure and

that it has mischaracterized its own cause of action in its opposition and brief. Therefore, the issue before the Court is whether or not Plaintiff can assert the existence of an alleged oral agreement as set forth hereinabove.

In reviewing the Plaintiff's opposition and brief, and the exhibits attached to Defendants' Reply Brief, the Court finds that (1) Plaintiff expressly abandoned its allegation that Plaintiff and RepublicBank agreed that Plaintiff would forego filing a mechanic's lien until after the title transfer to Tex–Star had occurred; (2) Plaintiff does not have any documents evidencing the alleged agreement that if the Bank foreclosed on the aircraft, it would allow Plaintiff to retain possession; (3) Plaintiff has abandoned its allegation of conspiracy; (4) that FDIC has a complete defense to the claims under the Texas Deceptive Trade Practices–Consumer Protection Act; (5) that FDIC has a complete defense to the claim for exemplary damages (and Plaintiff has withdrawn this claim in its opposition); and (6) that Plaintiff agrees that its claim against Martinaire should be dismissed.

The Court further finds that no lien was recorded by Plaintiff as against the aircraft in question with the Federal Aviation Administration at Oklahoma City, Oklahoma, as shown by Exhibit F attached to Defendants' Reply Brief.

■ Even if it could be found that Plaintiff had properly plead the existence of a mechanic's lien and that its cause of action was solely for foreclosure, which the Court declines to find, such claim would fail as against FDIC. Section 503 of the Federal Aviation Act, 49 U.S.C.App. 1403 requires that any instrument or document affecting title to an aircraft must be recorded with the appropriate Federal Aviation Administration office, which in this case, is Oklahoma City, Oklahoma. State law has been preempted by 49 U.S.C.App. 1403 and recordation is required in order for such lien to be valid against innocent third parties. *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983). *See also Aircraft Trading and Services v. Braniff, Inc.,* 819

F.2d 1227 (2nd Cir.) *cert. denied,* 484 U.S. 856, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987). Plaintiff attempts to rely upon Texas' mechanic's lien statutes, however, the Supreme Court has held in *Philko* 462 U.S. at 413, 103 S.Ct. at 2480 that "[A]lthough state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law."

■ Plaintiff apparently attempts to assert a lien for repairs and maintenance pursuant to an agreement between Plaintiff and the owner of the aircraft (not the Bank), despite the fact that no lien has been properly recorded with the FAA and no agreement appears in the record of First RepublicBank's records. FDIC is under no duty to search the files of an insolvent bank to determine the existence of evidence of a mechanic's lien at the time the bank is closed. *Federal Deposit Ins. Corp. v. Wood,* 758 F.2d 156, 162 (6th Cir.), *cert. denied* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). The Fifth Circuit has recently emphasized that this policy of requiring that all agreements be properly recorded in the bank's records as a prerequisite to their enforcement against FDIC overrides even such protections as the homestead exemption protection, like mechanic's lien, under the Texas Constitution. *Templin v. Weisgram,* 867 F.2d 240 (5th Cir.1989).

■ The Supreme Court in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) concluded that allowing side agreements to be used as defenses against the FDIC would enable individuals to circumvent the Federal Reserve Act. "If the secret agreement were allowed as a defense ... the maker of the note would be enabled to defeat the purpose of the statute by taking advantage of an undisclosed and fraudulent arrangement which the statute condemns and which the maker of the note made possible." *Id.* at 461, 62 S.Ct. at 681. The essence of the *D'Oench, Duhme* doctrine is that a borrower may not assert a claim or defense against the FDIC which is based upon a secret side agreement he had with the bank

because he has lent himself to a scheme, no matter how innocently, which would deceive the banking authorities. If the agreement is not properly documented in the bank's files, then it is considered to be "secret" as to the FDIC.

In *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) the Supreme Court focused on the policy of protecting the FDIC and emphasized that:

> While the borrower who has relied upon an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute. *Id.* 108 S.Ct. at 403.

The Fifth Circuit has recently reaffirmed that *D'Oench, Duhme* prevents the assertion of misrepresentations or side agreements as defenses against the FDIC. *See FDIC v. Cardinal Oil Well Servicing Co., Inc.,* 837 F.2d 1369, 1372 (5th Cir.1988); *Beighley v. FDIC,* 868 F.2d 776 (5th Cir. 1989).

*Langley, supra,* established the principle that the policies espoused in *D'Oench, Duhme* apply to all assertions based upon unwritten side agreements, regardless of whether they are raised as defenses or as affirmative claims for damages against the FDIC.

> To contend ... that [the *D'Oench, Duhme* doctrine] is not applicable to their affirmative claims against the FDIC is, while technically defensible, to misunderstand *Langley*'s import. To allow a claim *against* the FDIC asserting the very grounds that could not be used as a defense to a claim *by* the FDIC is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost.
>
> One purpose of [the doctrine] is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Allowing plaintiff's affirmative claim in the face of

[that doctrine] would undermine that purpose. *Beighley v. FDIC,* 676 F.Supp. 130, 132 (N.D.Tex.1987) affirmed 868 F.2d 776 (5th Cir.1989)

■ All claims, counterclaims and affirmative defenses barred as to the FDIC under the doctrine of *D'Oench, Duhme* are also barred as to NCNB, an entity taking the assets from the FDIC and owned by the FDIC. *Federal Sav. and Loan Ins. Corp. v. Murray,* 853 F.2d 1251 (5th Cir. 1988) (subsequent holder of note takes free of defenses); *Federal Deposit Ins. Corp. v. The Cremona Co.,* 832 F.2d 959, 964 (6th Cir.1987), *cert. dism'd sub. nom., Gonda v. FDIC,* 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988) (subsequent holder of note not subject to side agreement provisions limiting liability on note); *RSR Properties, Inc. v. FDIC,* 706 F.Supp. 524 at 531 (W.D.Tex.1989) (claims "barred as to FDIC are equally barred as to NCNB...."); *FDIC v. Wisenbaker* No. MO–88–CA–109, slip op. at 14 (W.D.Tex. Oct. 26, 1988) ("since the FDIC enjoys the status of a holder in due course, NCNB Texas could also acquire the same status....").

The Court therefore finds that Plaintiff's claims based upon alleged oral side or secret agreements are barred as against the Federal Deposit Insurance Corporation as Receiver for First RepublicBank Brownwood, N.A., and as to NCNB Texas National Bank. Plaintiff's suit is dismissed with prejudice as against Federal Deposit Insurance Corporation as Receiver for First RepublicBank, Brownwood, N.A., and NCNB Texas National Bank.

The Court further finds that Plaintiff's suit against Martinaire, Inc. should be dismissed with prejudice for want of prosecution.